People v Roundtree (2023 NY Slip Op 05288)

People v Roundtree

2023 NY Slip Op 05288

Decided on October 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 19, 2023

111898 113342
[*1]The People of the State of New York, Respondent,
v
Rashaun Roundtree, Appellant.

Calendar Date:September 5, 2023

Before:Lynch, J.P., Clark, Aarons, Pritzker and Ceresia, JJ.

James A. Bartosik Jr., Glenmont, for appellant, and appellant pro se.
Andrew J. Wylie, District Attorney, Plattsburgh (Jeffrey C. Kehm of counsel), for respondent.

Clark, J.
Appeals (1) from a judgment of the County Court of Clinton County (William A. Favreau, J.), rendered September 5, 2019, convicting defendant upon his plea of guilty of the crimes of criminal possession of a controlled substance in the third degree (four counts), criminal sale of a controlled substance in the third degree (three counts) and criminal possession of a controlled substance in the fourth degree, and (2) by permission, from an order of said court, entered February 14, 2022, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
On January 25, 2018, the narcotics division of the City of Plattsburgh Police Department, through a confidential informant, conducted two controlled buys of cocaine from Sarah Provost. Police conducted a third controlled buy from Provost through another confidential informant on January 30, 2018 and, later that day, obtained a search warrant for Provost's residence. While executing the warrant late that night, police observed defendant sitting alone on the living room couch, next to a baggie containing three suboxone strips and a small amount of a substance later confirmed to be crack cocaine; Provost and another woman were found in a different area of the residence. As defendant was being arrested, he reached into his pockets and discarded, among other things, some of the serialized money that was used in the controlled buys. Defendant was arrested and charged by felony complaint with criminal possession of a controlled substance in the third degree, stemming from the crack cocaine found during the execution of the warrant.
Defendant was arraigned and represented by assigned counsel. He rejected an initial plea offer of four years in prison followed by three years of postrelease supervision (hereinafter PRS). Defendant then retained counsel. On May 9, 2018, he was charged in a single-count indictment (hereinafter the first indictment) with criminal possession of a controlled substance in the third degree, stemming from the crack cocaine found during the execution of the search warrant. The same day, Provost was charged in a four-count indictment with charges stemming from the two controlled buys completed on January 25, 2018, and attorney Joseph Mucia was assigned to represent her. Defendant and Provost were charged separately and their cases were assigned to different judges.
Prior to defendant's arraignment on the first indictment, his retained counsel sought to be relieved due to a breakdown in the attorney-client relationship, which motion was granted. County Court set bail in the amount of $50,000 cash/$100,000 bond and adjourned arraignment for a week. At the next appearance, Mucia was assigned to represent defendant; defendant was arraigned, entered a plea of not guilty and, on Mucia's motion, defendant's bail was reduced to $25,000 cash/$50,000 bond. Mucia then filed discovery demands, a demand for a bill of particulars and an omnibus motion, and [*2]the People filed responsive papers. The People amended the prior plea offer to explicitly satisfy defendant's other known but uncharged crimes, to wit, the three controlled buys conducted in January 2018. Defendant rejected the amended offer at an appearance on September 4, 2018, where the People advised defendant of their intent to present evidence to a second grand jury to consider additional charges against him. By letter dated September 11, 2018, Mucia sought to be relieved as counsel for both Provost and defendant, noting that Provost had been subpoenaed to testify against defendant before the second grand jury. The court relieved Mucia from representing defendant, who was assigned attorney Justin Herzog. Mucia was also relieved from representing Provost and, on October 2, 2018, she appeared before the second grand jury represented by new counsel, waived immunity and provided testimony.
Defendant was thereafter charged in an eight-count superseding indictment with three counts of criminal possession of a controlled substance in the third degree (counts 1, 3 and 5) and three counts of criminal sale of a controlled substance in the third degree (under an acting in concert theory) (counts 2, 4 and 6) — one of each count for each of the three controlled buys completed in January 2018 — and a count of criminal possession of a controlled substance in the fourth degree (count 7) and criminal possession of a controlled substance in the third degree (count 8) stemming from the crack cocaine found during the execution of the search warrant. Defendant was arraigned on the superseding indictment on October 23, 2018. Soon after, Herzog filed discovery demands, a demand for a bill of particulars and an omnibus motion, and the People filed responsive papers. On November 9, 2018, Provost pleaded guilty to two counts of criminal sale of a controlled substance in the third degree.
At an appearance on January 3, 2019, defendant rejected a plea offer to resolve the superseding indictment — providing for an aggregate prison term of eight years followed by three years of PRS — and expressed frustration at feeling like Provost was being rewarded while he was punished disproportionately. Soon after, County Court issued an order on defendant's omnibus motion, among other things, denying defendant's request for a Mapp hearing. On January 14, 2019, Provost was sentenced to five years of probation. After posting bail, defendant appeared before the court in March 2019, where Herzog sought to be relieved upon learning that a former client was on the People's witness list. County Court relieved Herzog, and defendant was assigned attorney Michael Phillips. Then, on May 2, 2019, defendant rejected an amended offer — an aggregate prison term of seven years followed by three years of PRS — and, instead, pleaded guilty to the entire indictment. At that time, the People committed to seek a sentence of no more than seven years, so long as defendant continued to appear and was not [*3]arrested while awaiting sentencing.
Prior to the sentencing, defendant was arrested on new charges in Orange County.[FN1] He was transported to Clinton County, where County Court revoked his bail and adjourned sentencing. During the adjournment, defendant sent the court three letters seeking leniency highlighting, among other things, that Provost was the principal during the controlled buys and received a no-prison sentence. During the September 5, 2019 sentencing hearing, defendant admitted to being a second felony drug offender and again sought leniency based on, among other things, Provost's no-prison sentence. The People, in turn, sought a harsher sentence — an aggregate prison term of 10 years followed by three years of PRS — due to defendant's new arrest. County Court expressly declined to consider the new arrest and sentenced defendant to an aggregate prison term of 10 years followed by three years of PRS, along with fines amounting to $38,000. In 2021, defendant moved to vacate the judgment of conviction pursuant to CPL 440.10, alleging ineffective assistance of counsel and Brady violations by the People, a motion which the People opposed. County Court denied the motion without an evidentiary hearing. Defendant appeals from the judgment of conviction and, by permission, from the order denying his motion to vacate.
On the appeal from his CPL 440.10 motion, defendant argues that his plea was not knowing, voluntary and intelligent due to alleged Brady violations stemming from the People's failure to disclose Provost's cooperation agreement, her plea bargain and the transcript of her plea hearing. "To establish a Brady violation, a defendant must show that (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature; (2) the evidence was suppressed by the prosecution; and (3) prejudice arose because the suppressed evidence was material" (People v Fuentes, 12 NY3d 259, 263 [2009] [citation omitted]; see People v Slivienski, 204 AD3d 1228, 1239 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]). Inasmuch as "the existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under Brady principles" (People v Novoa, 70 NY2d 490, 496 [1987] [internal quotation marks and citation omitted]; see People v Lalonde, 160 AD3d 1020, 1026 [3d Dept 2018], lv denied 31 NY3d 1118 [2018]; People v Hotaling, 135 AD3d 1171, 1172 [3d Dept 2016]), and the People concede that they failed to disclose Provost's cooperation agreement or the attendant information, we focus our inquiry on the materiality of such evidence. "Where, as here, a defendant makes a specific request for undisclosed evidence, the materiality element is satisfied only if there exists a reasonable possibility that such evidence would have changed the result of the proceeding" (People v Stokes, 211 AD3d 1243, 1245 [3d Dept 2022] [internal quotation marks, brackets and citations omitted[*4]], lv denied 39 NY3d 1143 [2023]; see People v McGhee, 36 NY3d 1063, 1065 [2021]).[FN2]
On this record, defendant was first made aware that the People sought to have Provost testify against him in September 2018, when Mucia disclosed that detail as part of his request to be relieved as counsel. During an appearance in January 2019 — after Provost pleaded guilty but before she was sentenced — defendant complained that Provost was being rewarded while he was being punished disproportionately. After defendant pleaded guilty, he wrote several letters seeking leniency in his own sentencing, and he used those opportunities to note that Provost, the principal on the criminal sale charges, received a sentence involving no prison time, and defendant reiterated the same at his sentencing hearing. These instances reveal that, although the People failed to disclose the specifics of Provost's cooperation agreement, defendant knew that Provost had cooperated with the People and received a favorable sentence, and defendant attempted to leverage that information to lessen the sentence that would be imposed upon him. Considering that he possessed such knowledge, defendant failed to establish that there was a reasonable possibility that he would have proceeded to trial if the People had timely disclosed the specifics of Provost's cooperation and plea (see People v Lalonde, 160 AD3d at 1027; People v Sheppard, 107 AD3d 1237, 1240 [3d Dept 2013], lv denied 22 NY3d 1203 [2014]; see also People v Wright, 166 AD3d 1022, 1023 [2d Dept 2018], lv denied 32 NY3d 1211 [2019]).[FN3]
Defendant also argues that he was denied the effective assistance of counsel. Briefly, the record shows that Mucia was assigned to represent Provost on charges stemming from the first two controlled buys, and he was later assigned to represent defendant on the first indictment, which charges stemmed from the crack cocaine found during the execution of the search warrant. When Provost was subpoenaed to testify against defendant before the second grand jury, her interests were placed at odds with those of defendant, giving rise to an actual conflict which was properly resolved when Mucia was relieved and both Provost and defendant were assigned new, separate counsel (see People v Robinson, 121 AD3d 1179, 1180 [3d Dept 2014]; see also People v Linares, 2 NY3d 507, 512 [2004]). However, prior to Provost being subpoenaed, Mucia's simultaneous representation of Provost and defendant amounted to a potential conflict, and "defendant bears the heavy burden to show that [such] potential conflict actually operated on the defense" (People v Hartle, 192 AD3d 1199, 1201 [3d Dept 2021] [internal quotation marks and citation omitted], affd 40 NY3d 39 [2023]; see People v Wright, 27 NY3d 516, 521 [2016]). After reviewing the record, we conclude that defendant failed to meet such burden, as he failed to support his motion with anything more than his own conclusory, unsubstantiated suppositions (see People v Wright, 27 NY3d [*5]at 521-522; People v Sanchez, 21 NY3d 216, 223-224 [2013]; People v Hebert, 218 AD3d 1003, 1015 [3d Dept 2023]; People v Gibson, 185 AD3d 1101, 1102-1103 [3d Dept 2020], lv denied 35 NY3d 1066 [2020]). Defendant's myriad of further claims of ineffective assistance, premised on alleged failures by Mucia, Herzog and Phillips to make specific motions and seek specific discovery disclosures, were forfeited by defendant's guilty plea (see People v Dunbar, 218 AD3d 931, 933 [3d Dept 2023], lv denied 40 NY3d 950 [2023]; People v Rhodes, 203 AD3d 1316, 1318 [3d Dept 2022]). Nevertheless, inasmuch as defendant received an advantageous plea and nothing in the record casts doubt upon the apparent effectiveness of his counsel, defendant failed to establish that he was denied meaningful representation (see People v Sanders, 203 AD3d 1403, 1404 [3d Dept 2022]; People v Rhodes, 203 AD3d at 1318; see also People v Clark, 209 AD3d 1063, 1066 [3d Dept 2022], lv denied 39 NY3d 1140 [2023]).
Turning to defendant's challenge to his sentence as harsh and excessive, defendant stood convicted of seven class B felonies — three counts of criminal sale of a controlled substance in the third degree (see Penal Law § 220.39 [1]) and four counts of criminal possession of a controlled substance in the third degree (see Penal Law § 220.16 [1]) — and one count of criminal possession of a controlled substance in the fourth degree, a class C felony (see Penal Law § 220.09 [1]). Defendant's convictions constitute four separate criminal transactions, with counts 1 and 2 stemming from the first controlled buy, counts 3 and 4 from the second controlled buy, counts 5 and 6 from the third controlled buy and counts 7 and 8 from the crack cocaine found during the execution of the search warrant; as a second felony drug offender, defendant was exposed to four consecutive 12-year prison terms (see Penal Law §§ 70.25 [2]; 70.70 [1] [b]; [3] [b] [i], [ii]; see e.g. People v Taylor, 126 AD3d 1120, 1121-1122 [3d Dept 2015], lv denied 25 NY3d 1172 [2015], cert denied 577 US 1148 [2016]). Ultimately, County Court sentenced defendant to a prison term of 10 years, followed by three years of PRS, on each conviction of criminal sale of a controlled substance in the third degree, and to lesser terms for the other convictions, with all sentences running concurrently. Defendant has a lengthy criminal record and, throughout the proceeding, minimized his conduct and demonstrated a lack of remorse. As such, we discern no grounds upon which to reduce his sentence, and we decline to exercise our interest of justice jurisdiction to do so (see CPL 470.15 [6] [b]). However, inasmuch as County Court imposed fines upon defendant's convictions on counts 2, 4, 6 and 8, we must vacate the fines erroneously imposed upon his convictions on counts 1, 3, 5 and 7 (see Penal Law §§ 80.00 [1] [c] [iii], [iv]; 80.15; People v Sykes, 204 AD3d 1244, 1247 [3d Dept 2022], lv denied 38 NY3d 1136 [2022]; People v Regatuso, 140 AD3d [*6]1750, 1751 [4th Dept 2016]). Further, and notwithstanding the legality of the fines imposed on counts 2, 4, 6 and 8, we take into consideration defendant's prison sentence and invoke our interest of justice jurisdiction to vacate the remaining fines imposed pursuant to Penal Law § 80.00.
To the extent not expressly addressed herein, defendant's remaining contentions, including those raised in his pro se supplemental briefs, have been considered and lack merit.
Lynch, J.P., Aarons, Pritzker and Ceresia, JJ., concur.
ORDERED that the judgment is modified, on the law and as a matter of discretion in the interest of justice, by vacating the fines imposed, and, as so modified, affirmed.
ORDERED that the order is affirmed.

Footnotes

Footnote 1: The exact charges are unclear from this record, but it appears that defendant was involved in an altercation and was charged with grand larceny, among other things.

Footnote 2: The applicable materiality standard ("reasonable possibility" or "reasonable probability") is premised on whether the defense requested the undisclosed evidence (see People v Fuentes, 12 NY3d at 263; People v Wilkins, 216 AD3d 1359, 1366 n 2 [3d Dept 2023], lv denied ___NY3d ___ [Sept. 22, 2023]), not, as the People contend, on whether such evidence is classified as exculpatory or impeachment.

Footnote 3: Defendant argues that the People committed a Brady violation when they failed to disclose a supplemental detective's report, but he also concedes that said report was not discoverable pursuant to the discovery rules in place at the time (see CPL former 240.20), and, in any case, such argument is unpreserved as defendant failed to raise it in his motion papers (see People v Kimball, 213 AD3d 1028, 1030-1031 [3d Dept 2023], lv denied 40 NY3d 929 [2023]; People v Minaya, 206 AD3d 1161, 1162 [3d Dept 2022]).